FRED POINDEXTER v. SANCO CORPORATION AND SURRY COUNTY

J AND J OIL COMPANY OF ELKIN, INC. v. SANCO CORPORATION AND SURRY COUNTY v. FRED POINDEXTER

No. 7917SC565

(Filed 5 February 1980)

1. Negligence § 30— garbage truck catching on fire—negligence of lessee—sufficiency of evidence

In an action to recover for damages to plaintiff's gasoline pump, other equipment and building sustained when a garbage truck owned by one defendant and leased by the other caught fire and burned, the trial court erred in granting summary judgment for defendants where genuine issues of material fact were raised as to whether the gas tank on the truck was properly vented, the tank was designed for gasoline fuel, the placement of the muffler and exhaust system in close proximity to the fuel tank was unsafe, defendant lessee failed to inspect the garbage truck or failed to discover the dangerous condition of the gas tank if it did inspect, the agents and employees of defendant lessee knew the truck was not functioning properly, and defendant lessee failed to inform the gas station attendant of this unsafe condition.

2. Negligence § 6— garbage truck catching on fire—res ipsa loquitur inapplicable

Res ipsa loquitur was inapplicable in an action to recover damages sustained when a garbage truck owned by one defendant and leased by the other caught fire and burned, since the owner did not have exclusive control or management of the truck, and since the existence of lessee's negligence in failing to inspect the truck and warn of its unsafe condition, if proven, could be found by the jury to establish the existence of negligence.

APPEAL by plaintiffs Fred Poindexter and J and J Oil Company from *Long, Judge.* Judgments entered 9 April 1979, and Orders entered 20 April 1979 in the Superior Court, SURRY County. Heard in the Court of Appeals 16 January 1980.

These are separate cases originally filed in the District Court of Surry County, which were consolidated and transferred to the Superior Court Division. Both actions grew out of a fire which occurred on or about 17 July 1976 at a gasoline station owned by Fred Poindexter when a garbage truck owned by the defendant Sanco Corporation and leased to defendant Surry County caught fire and burned, destroying the garbage truck, damaging the gasoline pumps and other equipment owned by plaintiff J and J Oil Company of Elkin, Inc., and damaging the building and other

personal property of plaintiff Fred Poindexter. The complaints of the plaintiffs alleged joint and concurring negligence on the part of both defendants, which negligence resulted in the fire and damage to the plaintiffs' property. Both defendants answered, denying negligence. Defendant Sanco Corporation filed a counterclaim and third-party complaint against Fred Poindexter for damages to their garbage truck, and crossclaimed against defendant Surry County for damages to the garbage truck. Defendant Surry County also crossclaimed against the defendant Sanco Corporation for indemnity, or contribution. Motions for summary judgment were granted against both plaintiffs who have filed a joint appeal to this Court.

*Finger, Park & Parker, by Raymond A. Parker II and M. Neil Finger, for plaintiff appellants.*

*Faw, Folger, Sharpe & White, by Cama C. Merritt, and Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter, for defendant appellees.*

HILL, Judge.

Two questions are raised on this appeal:

(1) Did the court err in granting defendant appellee Sanco Corporation's motion for summary judgment against the plaintiff appellants Fred Poindexter and J and J Oil Company of Elkin, Inc.?

(2) Did the court err in granting defendant appellee Surry County's motion for summary judgment against the plaintiff appellants Fred Poindexter and J and J Oil Company of Elkin, Inc.?

From the verified complaint, affidavits and interrogatories filed in this cause and introduced for the purpose of considering the motions for summary judgment, the following facts appear.

(1) The 1971 garbage truck was manufactured by General Motors Corporation, then shipped to Dempster-Dumpster Systems, Inc., where a refuse body was mounted on the GMC chassis and where a 50-gallon fuel tank was installed in lieu of the temporary tank that originally came on the truck from GMC. The

truck was then shipped by Dempster-Dumpster, Inc. to the General Motors distributor in Winston-Salem.

(2) General Motors then sold the truck to Sanitary Container Service, Inc. with the gas tank and exhaust system already installed and in place.

(3) Some 48 months later, Sanitary sold the truck to Sanco Corporation. During the period the truck was owned by Sanitary and Sanco, new mufflers were installed from time to time, but the exhaust system was not otherwise altered. The truck never caused any problem before the day of the fire, to the knowledge of Sanco or Sanitary, and no one from Dempster-Dumpster, Inc., or GMC ever notified Sanitary or Sanco that the positioning of the exhaust system should be changed.

(4) Employees of Surry County took delivery of the garbage truck in Winston-Salem, N.C., at Sanco's premises on or about 14 July 1976. An employee of Sanco filled the gas tank without incident and detected no problem during fueling. The cap on the gas tank was green and of the vented type with four lead slugs in it.

(5) After the truck was filled with gas, employees of Surry County drove this truck back to Surry County, stopping in the Westfield community to make a routine garbage collection, then drove the vehicle on to the Surry County landfill where an employee of Surry County again filled the gas tank without incident. During the next two days the truck was operated by employees of Surry County and filled once at the service station owned by Fred Poindexter without incident.

(6) On the following day, a Saturday, the employees of Surry County again used the truck for routine garbage collections. The temperature was over 100° F, and one employee is alleged to have stated that he was ". . . running it like hell." There was evidence that the truck was backfiring on this date.

(7) The employees of Surry County pulled the truck into the filling station owned by Fred Poindexter. One of Poindexter's employees removed the gasoline nozzle from the pump and began unscrewing the cap when the cap ". . . blew out of his hand . . ." and gasoline began gushing from the tank. The truck burst into flames, damaging the building and equipment owned by the plaintiffs.

(8) Herbert Settle, one of the affiants, stated in his affidavit, *inter alia*, that he had taught auto and truck mechanics, had several years of experience as a mechanic, and had taken several courses taught at the General Motors Training Center in Charlotte; that he examined the GMC truck in question after the fire; and

> . . . that at the time he examined this 1971 GMC truck he found that the gas tank was not vented in any manner and that what appeared to have been a vent at one time had been plugged by a 'screw type cap'. That this affiant also examined the exhaust system on said truck and the exhaust system including the muffler appeared to be old and in a very much deteriorated condition; also in this affiant's opinion the exhaust system was not of sufficient length to provide a safe means for the expulsion of fumes, sparks and other gasses [sic] escaping from the combustion chambers of the engine on said truck; that in this affiant's opinion the exhaust system in the condition it appeared to be in at the time of his examination was such that it would allow sparks and even flames to be emitted from the exhaust system and muffler especially if the truck engine was not operating properly and was 'back-firing' or not firing properly. Any malfunction of the engine which would cause sparks or flames to escape through the exhaust system, especially 'back-firing' would cause the fuel tank on said truck to become extremely hot because the exhaust system terminated under the middle of the fuel tank and only inches below the same. Such a condition would cause the muffler to become extremely hot and in turn heat the fuel tank to such an extent that tremendous pressure would be built in the gas tank and could very likely cause gas to spew from the tank if the cap were removed. In the opinion of this affiant gasoline and the gaseous fumes escaping from the tank could come in contact with an overheated muffler and cause immediate combustion.
>
> It is further the opinion of this affiant that the arrangement of the exhaust system in the proximity of the fuel tank as it was on the 1971 GMC truck created a very hazardous condition and one which could very likely result in the fire which has been described to him to have occurred to this truck and it is further the opinion of this affiant that this

resulting fire was foreseeable by any trained mechanic who could have observed the arrangement of the exhaust system, especially the short length of the same and its close proximity to the fuel tank of said truck.

(9) There was other testimony offered by affidavit and interrogatories that was in conflict with the testimony of Settle and some testimony which would have, in part, corroborated it which we do not find necessary to set out.

Rule 56(c) of the Rules of Civil Procedure provides for summary judgment. "The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

A motion for summary judgment should not be granted unless it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of law. "Rule 56 is for the disposition of cases where there is no genuine issue of fact and its purpose is to eliminate formal trials where only questions of law are involved." *Kessing v. Mortgage Corp.*, 278 N.C. 523, 534, 180 S.E. 2d 823, 830 (1971); *Phillips v. Insurance Co.*, 43 N.C. App. 56, 58, 257 S.E. 2d 671, 673 (1979).

At trial, in order to survive a motion for a directed verdict, plaintiff will have the burden of offering proof of every material fact. On a motion for summary judgment, however, the moving party has the burden of showing the absence of a genuine issue as to any material fact. We feel the movants have failed to carry the burden and that summary judgment should be denied.

[1]  In this case there appear material issues of fact presented by the pleadings, interrogatories, depositions and affidavits. Plaintiffs allege that the gasoline tank on the truck owned by defendant Sanco Corporation was not properly vented; that the tank was not designed for gasoline fuel and that the placement of the muffler and exhaust system in close proximity to the fuel tank was unsafe. The affidavit of witness Settle showed the muffler to be old and in a very much deteriorated condition; that the exhaust system was not of sufficient length to provide a safe means for the expulsion of fumes, sparks and other gases escaping from

the combustion chambers; that the exhaust system would allow sparks and even flames to be emitted from the exhaust system, especially if the truck engine was not operating properly and was backfiring; that any malfunction of the engine which would cause sparks or flames to escape through the exhaust system, especially "backfiring", would cause the fuel tank on said truck to become extremely hot because the exhaust system terminated under the middle of the fuel tank and only inches below the same; that such a condition would cause the fuel tank to become extremely hot and tremendous pressure would build in the tank which would cause gas to spew therefrom; and that the resulting fire was foreseeable by any trained mechanic who could have observed the arrangement of the exhaust system.

> A bailor for hire, while not an insurer, may be liable for personal injuries to the bailee or third persons proximately resulting from the defective condition of a rented automobile while being used by the bailee for the purpose known to be intended, if the bailor was aware of the defective condition or by reasonable care and inspection could have discovered it. (Citations omitted.)

> It is the duty of a bailor for hire of an automobile to use reasonable care to see that the automobile is in good condition when it is let out for use on the highway, and he is liable for injury to the bailee or a third person proximately resulting from a breach of this duty.

*Hudson v. Drive It Yourself, Inc.*, 236 N.C. 503, 504-5, 73 S.E. 2d 4, 5 (1952).

It is not in dispute that defendant Sanco Corporation was a bailor for hire, and that defendant Surry County was the bailee. Sanco Corporation did owe a duty to third persons to lease a garbage truck in good condition to defendant Surry County. The questions as to whether the gasoline tank in question was defective and unvented and whether the muffler and exhaust system were unsafe, are thus material, and constitute issues of material facts concerning actionable negligence.

A bailor is not responsible for a defect subsequently discovered which was not discernible by reasonable inspection at the time. *Hudson, supra*, at p. 505. In fact, however, the truck had

been in the possession of Sanco for several years, the location of the exhaust system was fixed, and the termination of the exhaust system below the fuel tank was easily discernible. Although the deteriorated condition of the exhaust system was discovered some weeks after the accident, there is no contention that the condition had changed.

Plaintiff further alleges in its complaint that defendant Surry County, through its agents and employees, failed to inspect the leased garbage truck, or if they did inspect it, failed to discover the dangerous and hazardous condition of the gasoline tank and the unsafe condition and location of the exhaust and muffler system; that the agents and employees of the defendant Surry County knew the truck was not functioning properly and that the same was backfiring through the muffler and exhaust system creating additional heat and sparks in the vicinity of the gasoline tank, thus creating a more hazardous condition; and that the employer Surry County failed to inform the gas station attendant of this unsafe condition. The affidavits and depositions presented by plaintiff establish these facts. There are no affidavits presented by defendant Surry County showing that it inspected the truck or that its employees advised the filling station attendant of the backfiring.

It is the opinion of this Court that there are genuine issues of material fact concerning actionable negligence before the Court.

[2] Plaintiff contends that the doctrine of *res ipsa loquitur* applies against both defendants. We do not so hold in this case. It is a well settled rule that *res ipsa loquitur* does not apply where the instrumentality causing the injury is not under the exclusive control or management of the defendant. *Saunders v. R.R.*, 185 N.C. 289, 117 S.E. 4 (1923). In the case at bar, Sanco certainly did not have exclusive control or management of the truck. Likewise, the doctrine of *res ipsa loquitur* does not apply where the existence of negligent default is not the more reasonable probability, and where proof of the occurrence, without more, leaves the matter resting only in conjecture. *Dail v. Taylor*, 151 N.C. 284, 66 S.E. 135 (1909). Plaintiff has alleged a duty on the part of Surry County to inspect the garbage truck and learn of its dangerous condition; that Surry County knew the truck was not functioning properly; and that the agents of Surry County failed to inform the

service station attendant of the dangerous condition involving the gasoline tank and exhaust system. These facts, if proven, may be found by the jury to establish the existence of negligence.

The orders for summary judgment in favor of both the defendant Sanco and the defendant Surry County are

Reversed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.